# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 19-0252** (Wood 17-F-293)

**Douglas G.,**
**Defendant Below, Petitioner**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Douglas G.,[1] by counsel Joseph Munoz, appeals the February 15, 2019, order of the Circuit Court of Wood County that denied his motion for a post-judgment verdict of acquittal and sentenced him on one count of sexual abuse by a guardian to not less than ten nor more than twenty years in prison, followed by thirty years of supervised release. The State of West Virginia, by counsel Lara K. Bissett, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 14, 2012, petitioner married Serena M., a mother of seven children from a previous marriage. At the time, Serena M. lived in Alberta, Canada while petitioner resided in Parkersburg, West Virginia. Petitioner's wife and her children, including the victim in this case, E.M., did not permanently join petitioner in Parkersburg until August of 2015.

In March of 2017, E.M. disclosed that petitioner had sexually abused her. Det. Nathaniel Deuley of the Parkersburg Police Department spoke with petitioner on April 7, 2017, regarding E.M.'s allegations. Petitioner denied any wrongdoing and claimed that, when E.M. was thirteen years old, she tried to seduce him and that she was the sexual aggressor. Petitioner voluntarily spoke to the police again on April 13, 2017. During this interview, petitioner admitted that his hand touched E.M.'s vagina while the two were in the family's kitchen.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

On September 15, 2017, petitioner was indicted on four counts of sexual abuse by a guardian. Count III of the indictment, which is relevant to this appeal, provides as follows:

> That between __ day of February 2015 and the __ APRIL 2015 [sic], in Wood County, West Virginia, [**petitioner**] committed the offense of **"Sexual Abuse by a Custodian"** by unlawfully and feloniously engaging in or attempting to engage in sexual contact with **E.M.**, a child, to wit, by touching her vagina with his hand, at a time when **E.M.** was under the age of eighteen (18) years, and he, that said [**petitioner**] was over the age of fourteen (14) and was the custodian of the said **E.M.**, against the peace and dignity of the State.

(Emphasis in the original.)

Petitioner's three-day trial took place in December of 2018. The jury heard from the victim, E.M.; E.M.'s mother, Serena M.; petitioner; and Det. Deuley, among other witnesses. The jury also viewed an audio/video recording of petitioner's April 7, 2017, police interview, and listened to an audio recording of petitioner's April 13, 2017, police interview. At trial, E.M. testified that petitioner put his hand on her breasts and vagina. Regarding Count 3, E.M., on cross-examination, testified that one evening, when she and petitioner were in the kitchen alone together and petitioner was cooking spaghetti, he touched her inappropriately. Petitioner referred to this as the "spaghetti incident," and sought to show that E.M. was living in Canada at the time E.M. alleged the spaghetti incident occurred. E.M. testified that she "could have got the year mixed up, because, [she's] not good at years[.]" On redirect, E.M. was asked:

> *The State*: What are you sure of? Of the things that we've talked about, the dates and the touching, what's the thing that you're sure of?
> *E.M.*: The touching and the events.
>   . . . .
> *The State*: Okay. What about the person who did it?
> *E.M.*: I'm sure on that. (E.M. then identified petitioner as her abuser.)

On re-cross examination, petitioner's counsel asked E.M., "As far as what happened with the spaghetti incident, did you ever grab [petitioner's] hand and place it on your body?" E.M. answered, "No."

At the close of the State's case-in-chief, it moved to amend the dates in Count III of petitioner's indictment from February to April of 2015, to February to December of 2015. Petitioner objected on the ground that the amendment would be to his prejudice. The State countered that time is not a substantial element of a sexual abuse case and, therefore, petitioner would not be prejudiced by the change of dates because it would not constitute new evidence. The trial court denied the State's motion finding it to be untimely. Petitioner responded with a motion for a directed verdict on Count III arguing that the evidence that E.M. was living in West Virginia from February to April of 2015 was "shaky." The court denied that motion on the ground that, at that point in the trial, it needed to view the evidence in the light most favorable to the State.

2

During petitioner's case-in-chief, he took the stand in his own defense. Regarding the spaghetti incident, he said that soon after his wife and her children moved to Parkersburg in August of 2015, E.M. came over to him while he was cooking spaghetti, grabbed his hand, and leaned into him. He said that he "felt something metal on his hand" and then jerked his hand away. He said that "the only thing [he] could see on her was her zipper" so he assumed that was what he felt. However, on cross-examination, petitioner admitted to making certain statements during his April 13, 2017, interview with Det. Deuley:

> *Petitioner*: He said—he asked me if there was anything inappropriate that I had done.
> *The State*: Right. And it says in the second statement right towards the end, you said – The officer started with, "Do you think, even though she is partially at fault, more or less, her age being fourteen as an issue, do you think that she's at fault in this? And your answer was, "At fault for what?" And he said, "Instigating. You're supposed to be the responsible adult." Do you remember what you said?
> *Petitioner*: I think I said fifty/fifty, but you won't let me finish that sentence.
> . . . .
> *The State*: Do you remember what your response was then.
> *Petitioner*: No.
> *The State*: [You said] "I'm just as guilty—well she might be sixty and me forty or something like that, but I got the erection, so, all right?" Do you remember that?
> *Petitioner*: Yes.

Petitioner also called Serena M. (his wife and E.M.'s mother) who testified that she and her children, including E.M., were living in Canada between February and April of 2015. Thereafter, testimony from an official with the Wood County school system showed that E.M. was not enrolled in that school system between June of 2014 and August of 2015.

The jury found petitioner guilty of Count III, but acquitted him of Counts I, II, and IV.

On January 7, 2019, petitioner filed a motion for a post-verdict judgment of acquittal claiming insufficient evidence of guilt at trial on Count III. The court denied the motion, finding there was sufficient evidence to support the jury's verdict on Count III. The court also found that, although the dates in the indictment did not match the evidence adduced at trial, the actual dates of abuse were reasonably near the dates alleged in the indictment.

On February 15, 2019, the circuit court sentenced petitioner to not less than ten nor more than twenty years in prison, thirty years of supervised release, and registration for life as a sex offender.

Petitioner now appeals the circuit court's denial of his motion for a post-verdict judgment of acquittal. We apply a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence. *See State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). We have further explained that,

> [t]he function of an appellate court when reviewing the sufficiency of the

3

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Petitioner first argues that, for months prior to trial, the State had actual knowledge of exculpatory evidence regarding Count III of petitioner's indictment showing that petitioner and the alleged victim were not in the same country during and beyond the months listed in petitioner's indictment. Petitioner claims that, given this knowledge and a prosecutor's duties regarding exculpatory evidence, the State should have dismissed Count III. Moreover, petitioner argues that the State failed to present sufficient evidence to support his conviction on Count III because, during the State's case-in-chief, E.M. testified that throughout February, March, and April of 2015, she was in school in Canada. Petitioner also highlights that, during his case in chief, E.M.'s mother confirmed that she and her children, including E.M., were in Canada in February, March, and April of 2015. E.M.'s mother also testified to a document showing that E.M. was in school in Canada through May of 2015. Petitioner notes that the State stipulated to that fact and that he later testified to the same. Finally, petitioner highlights that State witness Chris Rutherford, the Director of Attendance for the Wood County school system, testified that E.M.'s school attendance was complicated given that she lived in Canada and West Virginia for alternate periods of time. However, he also testified that E.M. was not enrolled in the Wood County school system in February, March, or April of 2015, but was enrolled in Wood County in August of 2015.[2]

Accordingly, petitioner argues that, months before his trial, the State knew petitioner and E.M. were not in the same country when petitioner was alleged to have sexually abused her. Thus, petitioner avers that the prosecutor was duty bound to remedy the false allegation in Count III of the indictment under Rule 3.8(a) of the West Virginia Rules of Professional Conduct, which requires a prosecutor to "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]" Thus, petitioner argues that his conviction should be set aside.

We disagree and find that the evidence adduced at trial was sufficient to support both petitioner's indictment and his conviction on Count III of the indictment alleging sexual abuse by a custodian.

Petitioner's argument fails on multiple fronts. First, as the State argued and the trial court found, time is not an essential element of the offense of sexual abuse by a custodian. "'A variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where time is not of the essence of the crime charged.' Syllabus Point

---

[2] As noted above, near the end the State's case, it moved to amend petitioner's indictment by extending the time frame during which the alleged crimes occurred, i.e., from February through April of 2015 to February through December of 2015. Petitioner objected and the trial court denied the State's motion.

4, *State v. Chaffin*, 156 W.Va. 264, 192 S.E.2d 728 (1972)." Syl. Pt. 2, *State ex rel. State v. Reed*, 204 W. Va. 520, 514 S.E.2d 171 (1999). In *Reed*, the State sought to prohibit the circuit court from dismissing the defendant's sexual assault charges. The indictment charged that defendant sexually assaulted his child between July and September of 1990. However, when the evidence at trial established that the sexual assault occurred between June and November of 1991, the defendant moved for a judgment of acquittal. The trial court granted that motion and the State responded with a petition for a writ of prohibition arguing that time is not an element of the offense of sexual assault and, therefore, the trial court erred in dismissing the charges against the defendant. On appeal, the *Reed* Court found that West Virginia Code § 62-2-10 (1923) was controlling. *Id.* at 522, 204 S.E.2d 173. That section provides: "No indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense." In granting the State's petition for a writ of prohibition, the Court cited to *State v. Pennington*, 41 W. Va. 599, 23 S.E. 918 (1896), for the proposition that "[w]here you do state the date, a variance between that date and the proof is immaterial, in any class of cases, at common law, so you prove it to be at such a date as brings it within the period of the statute, if any applies." *Id.* at 601, 23 S.E. 919. *Accord State v. Lewis*, 138 W. Va. 743, 746, 77 S.E.2d 606, 607 (1953).

Likewise, in the instant case, time is not of the essence in an action charging sexual abuse by a custodian under West Virginia Code § 61-8D-5. That section provides, in part:

> (a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.
>
> . . . .
>
> (d) The provisions of this section shall not apply to a custodian or person in a position of trust whose age exceeds the age of the child by less than four years.

Of the provisions set forth in West Virginia Code § 61-8D-5 only subsection (d) makes time relevant. Here, it is undisputed that petitioner's age exceeded E.M.'s age by more than four years. Thus, § 61-8D-5(d) does not apply in this case. Accordingly, the timeframe in which petitioner abused E.M. is "not of the essence" to his offense, and the variance between the dates

alleged in Count III of the indictment and the evidence adduced at trial does not negate the probable cause upon which the State prosecuted petitioner.

Because time is not an essential element of sexual abuse by a custodian, Count III of petitioner's indictment was sufficient under Article III, § 14 of the West Virginia Constitution and Rule 7(c)(1) of the West Virginia Rules of Criminal Procedure.

> An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

Syl. Pt. 6, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999). Here, Count III laid out the elements of sexual abuse by a custodian as defined by West Virginia Code § 61-8D-5. Thus, petitioner had fair notice of the charges against him and, therefore, had ample opportunity to prepare his defense.

Finally, with regard to petitioner's sufficiency of the evidence claim, the evidence at trial, including E.M.'s testimony, Det. Deuley's testimony, the recordings of petitioner's two statements to Det. Deuley, and petitioner's own testimony, was sufficient to prove the elements of the crime of sexual abuse by a custodian. Therefore, the State did not violate Rule 3.8 of the West Virginia Rules of Professional Conduct because it had probable cause to indict petitioner and sufficient evidence to prosecute and convict him on Count III.

In petitioner's second assignment of error, he argues that the trial court erred by failing to grant his motion for a judgment of acquittal due to insufficient evidence. Petitioner also claims that, when he moved for a post-trial judgment of acquittal, the trial court erred when it conflated Counts I, II, and IV, of which petitioner was found not guilty, as follows:

> That had to do with amending the indictment, which the court ruled that they could not amend the indictment based upon that however. It's clear West Virginia law provides that in sexual abuse cases, particularly of children, that the time is not of the essence as long as it's reasonably near the time alleged. Obviously, the child was in school in Canada during the time that's set forth in that particular count, but the evidence seems to show that this incident in the kitchen most likely occurred in August or September of 2015. I think that's the approximate time the children moved to West Virginia from Canada.

Petitioner maintains that because the trial court conflated the acquitted counts (I, II, and IV) with the sole guilty count (III) and misstated the burden of proof with its language that the "evidence seems to tend to show that this incident in the kitchen most likely occurred in August or September of 2015," its ruling on the two motions for a judgment of acquittal was error.

We disagree and find that the trial court did not err in denying petitioner's motion for a judgment of acquittal because the evidence adduced at trial was sufficient to support the jury's verdict. We have said,

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

*LaRock*, 196 W. Va. at 299, 470 S.E.2d at 618, syl. pt. 2.

As noted herein, in syllabus point 3 of *Guthrie*, the relevant question was whether any rational jury could come to a guilty verdict based on the evidence presented at trial. 194 W. Va. at 663, 461 S.E.2d at 169. Here, the jury found that the State proved that petitioner committed the essential elements of sexual abuse by a guardian as stated in Count III beyond a reasonable doubt. Specifically, the State proved that: (1) petitioner was a person in a position of trust in relation to E.M., who was under his care and care, custody or control inasmuch as he was her step-father, as proven through the testimony of E.M., E.M.'s mother, and petitioner; (2) petitioner engaged in sexual conduct with E.M., a child under his care, custody or control, by touching her vagina with his hand, as proven through the testimony of Det. Deuley, petitioner's recorded statement to Det. Deuley, and petitioner's own testimony; and (3) E.M. was a minor child and that petitioner was at least four years older than E.M. at the time the abuse occurred, as proven through E.M.'s testimony, petitioner's testimony, and Det. Deuley's testimony. Any questions regarding the credibility of these witness was solely in the province of the jury, which resolved those questions in favor of the State. Moreover, the jury acquitted petitioner of Counts, I, II, and IV, which shows the jury carefully considered each charge. Therefore, we find no error.

Accordingly, for the foregoing reasons, we affirm the February 15, 2019, order of the Circuit Court of Wood County that denied petitioner's motion for a post-judgment verdict of acquittal.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman